# United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

**In the Matter of the Search of**
(Name, address or Brief description of person, property or premises to be searched)

3011 Borger Street
Dallas, Texas 75212
A single family, one story, beige in color wooden framed structure having a composition shingled roof. The residence is the only residence located between 3007 Borger Street and 3015 Borger Street

**APPLICATION AND AFFIDAVIT FOR SEALED SEARCH WARRANT**

CASE NUMBER: 3:07-MJ-462

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 1 2 2007
CLERK, U.S. DISTRICT COURT
By _____
Deputy

I __Kevin Adams__ being duly sworn depose and say:

I am a(n) __Special Agent with the United States Drug Enforcement Administration (DEA)__ and have reason to believe that on the property or premises known as

3011 Borger Street Dallas, Texas 75212, single family, one story, beige in color wooden framed structure having a composition shingled roof. The residence is the only residence located between 3007 Borger Street and 3015 Borger Street.

in the __NORTHERN__ District of __TEXAS__ there is now concealed a certain person or property, namely (describe the person or property to be seized)

(See Attachment A )

which is
property that constitutes evidence of the commission of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or property designed or intended for use or which is or has been used as the means of committing a criminal offense.

concerning a violation of 21 U.S.C. §841(a)(1) and 846   The facts to support a finding of Probable Cause are as follows:

See attached affidavit of Special Agent Kevin Adams.

Continued on the attached sheet and made a part hereof.   __x__ Yes   __No__

_____
Special Agent Kevin Adams
Signature of Affiant

Sworn to before me, and subscribed in my presence

Date: October 12, 2007   1:00 P.M.

at __Dallas, Texas__
City and State

__Paul D. Stickney, United States Magistrate Judge__
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT

Affiant, Kevin M. Adams, having been duly sworn, does hereby state and depose as follows:

1.      I have been employed as a Special Agent of the Drug Enforcement Administration (DEA) since October 1996.  Prior to my employment with DEA I was employed as a State Trooper with the New York State Police from October 1991 to October 1996.  I am currently assigned to the DEA Dallas Field Division.  Affiant has investigated numerous violations of Title 21, United States Code, Section 841(a) (1) and Title 21, United States Code, Section 846.  I have conducted and participated in numerous investigations in conjunction with federal, state, and local agencies involving the illegal importation, manufacture, distribution and sale of controlled substances.  I have debriefed numerous defendants, informants, and witnesses who have personal knowledge of concealing, transporting, and distributing illegal drugs.  The information contained in this Affidavit is based upon Affiant's personal participation in the investigation described herein and from information provided to him by other law enforcement officers involved in this investigation and other individuals who have knowledge of the events and circumstances herein described and does not contain every known fact about this investigation.  Affiant, being duly sworn, swears that the following facts are true and correct to the best of his knowledge.

2.      Affiant makes this Affidavit in support of an Application for a Search Warrant on the premises located at 3011 Borger Street, Dallas, Texas 75212-3932, described as a

**Affidavit - Page - 1**

single family, one story, beige-colored wooden frame structure, having a composition shingled roof. The front door of the residence faces east. The premise is the only residence located between 3007 Borger Street and 3015 Borger Street on the western side of the Borger Street.

3. Affiant has probable cause to believe that the items described in the attached property list (Attachment "A") will be found within the suspected residence. Attachment "A" is hereby incorporated by this reference for all purposes of this Affidavit. Affiant further states that said property constitutes evidence of the commission of federal criminal offenses, namely, 21 U.S.C. § 841(a) (1) (possession with intent to distribute and distribution of a controlled substance) and 21 U.S.C. § 846 (conspiracy to possession and distribute a controlled substance). Said property also constitutes contraband, the fruits of the above criminal offenses, things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing the above criminal offenses.

4. This request for the issuance of a search warrant is based on the following:

On or about October 4, 2007, a credible and reliable DEA Confidential Source, hereafter referred to as CS, met with DEA agents and provided information about a multi-kilogram cocaine and multi-pound black tar heroin distributor known to the CS as Hindelbran BECERRA alias "EL PRIMO" and "IVAN". The CS stated that he/she has known of BECERRA for approximately two (2) years. The CS stated that he/she never purchased or sold narcotics to BECERRA but a close associate of the CS purchased narcotics from

Affidavit - Page - 2

BECERRA on numerous occasions. The CS stated that in September 2007 he traveled to the residence of BECERRA, 3011 Borger Street, Dallas, Texas, in order to speak with BECERRA about a non-narcotics related matter. The CS stated that when he arrived approximately ten (10) subjects were at the residence of BECERRA. The CS also noted that a white in color Mercury Grand Marquis was parked at the residence. The CS stated that he/she had been previously informed by a close associate that the residence of BECERRA was a "drug house" which means a residence that individuals travel to in order to purchase and/or consume illicit narcotics. The CS stated that after meeting with BECERRA at the residence he/she acquired a cellular telephone number (214.571.8354) utilized by BECERRA from one of BECERRA'S associates.

5.  On or about October 4, 2007, at the request of DEA agents, the CS conducted three (3) recorded and consensually monitored calls to BECERRA at cellular phone number 214.571.8354. During the recorded calls BECERRA and the CS discussed the price for ounce quantities of black tar heroin. BECERRA informed the CS that he (BECERRA) sold black tar heroin for $1,500 per ounce with lower purity heroin being available at $1,200 per ounce. The CS arranged to meet with BECERRA in person on a later date in order to discuss and coordinate the purchase of multiple ounces of heroin from BECERRA.

6.  On or about October 10, 2007, the CS placed a recorded and consensually monitored telephone call to BECERRA at cellular phone number 214.571.8354. During this recorded call the CS requested that BECERRA meet with the CS at the Wal-Mart

**Affidavit - Page - 3**

parking lot located at 1521 N. Cockrell Hill Road, Dallas, Texas. BECERRA agreed to meet the CS at the stated location. At approximately 2:00 p.m., surveillance agents observed two Hispanics males seated in a white in color Mercury Grand Marquis located in the parking lot of the Wal-Mart located at 1521 N. Cockrell Hill Road. The Mercury Grand Marquis was bearing Texas registration plate number 432-XDX, registered to Hindelbran BECERRA, 3011 Borger St., Dallas, Texas 75212. Prior to meeting with BECERRA, the CS was equipped with a concealed digital audio recorder in order to make an audio recording of any conversation the CS conducted with BECERRA and/or any other unknown subject(s). The CS arrived at the Wal-Mart parking lot at approximately 2:13 p.m. and BECERRA exited the Mercury Grand Marquis and entered the front passenger side of the CS vehicle. Surveillance agents were able to make a videotaped recording of BECERRA at the Wal-Mart parking lot in the Mercury Grand Marquis meeting with the CS. During the meeting at the Wal-Mart parking lot, the CS presented BECERRA with the fictitious scenario of having associates who resided outside of Texas who would travel to the Dallas area in order to purchase kilogram quantities of cocaine and pound quantities of heroin. BECERRA informed the CS that he could supply the CS with the quantities of cocaine and heroin that the CS requested. The CS then requested for BECERRA to supply the fictitious associates of the CS with ten (10) kilograms of cocaine and one (1) pound of heroin on Friday October 12, 2007. BECERRA informed the CS that the narcotics transaction must occur at either the residence of BECERRA (3011 Borger Street, Dallas, Texas 75212-3932) or the residence

**Affidavit - Page - 4**

of the CS. The CS agreed to conduct the narcotics transaction at the residence of BECERRA. Additionally, BECERRA informed the CS that he (BECERRA) had served seven (7) years of a twenty (20) year prison sentence for being arrested for distribution of ten (10) kilograms of cocaine. BECERRA informed the CS that he (BECERRA) was wanted in relation to his arrest for cocaine. BECERRA informed the CS that his black tar heroin was of such high purity that BERRERA would place only a few grams of heroin in capsule and fill the rest of the capsule with "cut" and distribute the heroin capsules out of his residence. While meeting with the CS, BERRERA received a phone call from an unknown subject that wanted to purchase narcotics from BECERRA. BECERRA informed the unknown subject that he (BECERRA) was not too far away from his residence and that he would meet the unknown subject at the residence of BECERRA. Before terminating the meeting with the CS, BECERRA instructed the CS to use the code number "28" when discussing cocaine telephonically and the code number "15" when discussing the heroin telephonically with BECERRA. BECERRA also informed the CS that he (BECERRA) would have to speak with his (BECERRA) "niece" in order to get the price on the kilograms of cocaine.

7.  On or about October 10, 2007, DEA agents confirmed the identity of BECERRA as J Hindelbran BECERRA alias Ivan Reese BARRERA, date of birth 10-17-1957, via Dallas County records, Texas Department of Safety Driver License image, and NCIC criminal history records. Agents confirmed that BECERRA was arrested on April 17, 1995 by the Dallas Police Department for possession of a controlled substance and

Affidavit - Page - 5

sentenced to twenty (20) years parole from August 31, 1995 to March 18, 2015 and has been a fugitive since April 1, 2005 for parole violations.

8. On or about October 11, 2007, the CS identified BECERRA as J Hindelbran BECERRA alias "IVAN" and "EL PRIMO" via a Texas driver license image.

9. On or about October 11, 2007, the CS conducted several recorded and consensually monitored calls to BECERRA. BECERRA informed the CS that he met with his niece and the price of the cocaine would be $17,700 per kilogram. The CS and BECERRA agreed to conduct the transaction at the residence of BECERRA at approximately 12:00 p.m., on Friday October 12, 2207. The CS informed BECERRA that he/she will call BECERRA and meet with BECERRA at 3011 Borger Street, Dallas, Texas prior to the narcotics transaction in order to confirm that the narcotics are ready for distribution.

10. Affiant believes that J Hindelbran BECERRA currently possesses, or will have a delivery of, multiple pounds of heroin and multiple kilograms of cocaine at his residence located at 3011 Borger Street, Dallas, Texas. In anticipation of a credible and reliable CS confirming the presence of narcotics at 3011 Borger Street, Dallas, Texas, Affiant seeks the issuance of a search warrant directing the search of the residence, and the seizure of illicit narcotics, along with any other evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, and in particular those items described in Attachment "A."

11. The search warrant will not be executed unless and upon determination by Affiant

Affidavit - Page - 6

or his designee that illicit narcotics have been observed at 3011 Borger Street, Dallas, Texas. Following the CS meeting with BECERRA at 3011 Borger Street, Dallas, Texas, Affiant and other law enforcement agents will conduct continuous surveillance of the location until such time the CS confirms the presence of illicit narcotics, thus giving rise to the conclusion of probable cause that the evidence of a crime could be found inside the residence.

12. Based on my training, experience and participation in this investigation and other investigations involving the trafficking of controlled substances, I know that:

a. Drug traffickers very often place assets, including accounts at financial institutions, in names other than their own to avoid the detection of these assets by government or other law enforcement agencies;

b. Even though these assets are in other persons' names, the drug dealers continue to use these assets and exercise dominion and control over them;

c. Large-scale narcotics traffickers often must maintain large amounts of United States currency on hand in order to maintain and finance their on-going narcotics business, and in some cases their extravagant life styles;

d. Illicit drug traffickers must maintain books, records, receipts, notes, ledgers, computers and computer disks, airline tickets, money orders, cashier check receipts, photographs, bank records, credit card records, automobile rental records, vehicle registrations, real estate records, mail and contract mail carrier records, records of shipping packages, keys to safe

Affidavit - Page - 7

deposit boxes and other papers relating to the transportation, ordering, sale and distribution of controlled substances;

e. Illicit drug traffickers commonly "front," (provide on consignment), controlled substances to their customers; and, that the items in paragraph 3d. are maintained by suppliers of illegal drugs so they can account for their drugs, the money owed for these drugs and who has paid or owes for these drugs;

f. It is common for large-scale dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, businesses, safe deposit boxes, safes, vaults, and obscure locations known only to them, i.e. mail drops, mini storage warehouses, etc., to conceal them from other drug traffickers and law enforcement authorities;

g. Persons involved in large-scale drug trafficking conceal in their residences, businesses, safe deposit boxes, safes, vaults, obscure locations, and vehicles, stashes of drugs, large amounts of currency, financial instruments, precious metals, jewelry, furs, art, coin collections, and other items of value representing the proceeds of the drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in illegal narcotic trafficking activities;

h. Drug dealers often purchase expensive vehicles, businesses and residences with the proceeds from their drug transactions;

I. When drug dealers collect proceeds from the sale of drugs, they often attempt to legitimize these profits. To accomplish this goal, drug traffickers use, including but not

Affidavit - Page - 8

limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, brokerage houses, trusts, partnerships, shell corporations and business fronts;

j. Drug traffickers commonly maintain addresses and/or telephone numbers, pager records, telephone toll records, cellular telephone records and other records of telephone calls, both in writing and electronically, in books or papers which reflect the names, addresses and telephone numbers for their associates in the drug trafficking organization, in their residences;

k. Drug traffickers often keep paraphernalia for cutting, packaging, weighing and distributing their drugs, including but not limited to, scales and plastic bags;

l. Courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, illegal trafficking in controlled substances;

m. It is common for large-scale dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences.

13. The information contained in this Affidavit is based upon Affiant's observations, investigation, training, and also from information Affiant has received from other law enforcement officers. Based on the facts and information as stated in this Affidavit, Affiant believes there is probable cause to believe that the evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, and in particular those items described in Attachment "A," are and will be concealed in the premises located at 3011 Borger Street, Dallas, Texas 75212.

**Affidavit - Page - 9**

14. Due to the sensitive nature of this investigation, it is further requested that this Affidavit be sealed until further order of the Court.

                                              Kevin M. Adams  
                                              Special Agent  
                                              Drug Enforcement Administration

Sworn to and subscribed before me on this 12th day of October 2007.

                                              PAUL D. STICKNEY  
                                              United States Magistrate Judge  
                                              Northern District of Texas

# ATTACHMENT "A"

1.      Books, records, receipts, notes, ledgers, bank records, money orders, credit card records, receipts for cashier's checks, airline tickets, automobile rental records, vehicle registrations, real estate records, mail and contract mail carrier records, keys to safe deposit boxes, and/or other papers relating to the transportation, ordering, sale and distribution of illegal controlled substances or relating to the receipts and/or disposition of the proceeds from the distribution of illegal controlled substances or the illegal laundering of funds derived from sale of controlled substances;

2.      Currency, financial instruments, precious metals, jewelry, and/or other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, laundering, secreting or spending large sums of money made from engaging in illegal controlled substance activities;

3.      Telephone and address books, electronic pagers and pager records, mobile and cellular telephones including records of telephone calls whether recorded in writing or electronically, and lists of telephone and pager numbers or papers which reflect names, addresses and/or telephone numbers of individuals associated in dealing in illegal controlled substances;

4.      Photographs and videotapes of individuals and property, with methamphetamine or money and/or associates in the methamphetamine business;

5.      Illegal controlled substances and materials used in the packaging, cutting, weighing, cooking and/or manufacturing and distributing of illegal controlled substances;

6.      Firearms and ammunition for firearms;

7.      Electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data.  These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer-related electronic devices;

8.      Instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components.  The items to be seized include operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission; and

9.      Written or printed material which provides instructions or examples concerning the

operation of a computer system, computer software, and/or any related device.

10.     Indicia of occupancy, residency, and/or ownership of the premises, includes but is not limited to, utility and telephone bills, canceled envelopes and keys.